George **FLETCHER**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 16294.

United States Court of Appeals District of Columbia Circuit

Argued June 26, 1961.

Decided Sept. 29, 1961.

---

8. 23 D.C.Code § 101 (1951).

180

---

Mr. Gerhard P. Van Arkel, Washington, D. C. (appointed by the District Court) for appellant.

Mr. Frank Q. Nebeker, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Charles T. Duncan, Asst. U. S. Atty., were on the brief, for appellee. Mr. Daniel J. McTague, Asst. U. S. Atty., also entered an appearance for appellee.

Before WILBUR K. MILLER, Chief Judge, and EDGERTON and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

Appellant was indicted, tried before the court sitting without a jury, and convicted of violation of the narcotics laws. He raises the defense of entrapment. We find no merit in this claim.

The principal witness against appellant was Officer Hutcheson, a member of the Metropolitan Police Department attached to the Narcotics Squad and working in the capacity of undercover man in the illicit drug traffic in the District of Columbia. He was working under the supervision of two other officers of the Narcotics Squad.

On July 25, 1960, Hutcheson met one Burnett, a special employee of the Police Department, who had worked with him on five or six occasions prior thereto. They went to the area of 6th and Q Streets, N. W., where Hutcheson made the usual search to ascertain that Burnett had no cash or narcotics on his person and then gave him $6.00 for the purchase of narcotics, which Burnett said he could purchase from appellant. Burnett then walked, approximately thirty-five paces in front of Hutcheson, to 638 Q Street, N. W., where Fletcher lived. Noticing that Fletcher was seated across the street with another man, one Colbert, Burnett crossed the street and had conversation with them, in the sight of Hutcheson but beyond his hearing. Burnett gave Colbert the money which had been given him by Hutcheson. Colbert turned the money over to Fletcher, who then gave him a package, which he, in turn gave to Burnett. All of this was observed by the police officer, who immediately received the .package from Burnett. Appellant does not challenge that the package was found to contain narcotics.

Later, on the affidavits of Hutcheson and Burnett, a search warrant was obtained for Fletcher's premises, and on these premises were found narcotics, needles and syringes.

Although Burnett was known to appellant, as well as to the Government, he was not called as a witness by either side. His testimony was not essential to prove the Government's case. No evidence was offered on behalf of appellant.

■ We see nothing whatsoever in the evidence which even remotely suggests "entrapment" and nothing to show that the offense was the product of activity created by the police officer. It is settled law that "[a]rtifice and stratagem may be employed to catch those engaged in criminal enterprises." Sorrells v. United States, 1932, 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413. The

courts set up protection only for one who had had no previous disposition to commit the crime. We think it may be said that appellant was "the unwary criminal" rather than an "unwary innocent." [1] Certainly the record does not show as a matter of law that the police or any police informant had induced an otherwise unwilling person to commit a criminal act. Appellant is shown to have been known to Burnett as a person from whom narcotics could be purchased, and there was no showing of the slightest reluctance on the part of appellant to make the deal. He took the precaution of getting the cash before delivering the narcotics. Certainly there was no evidence of "extraordinary pressure" [or any pressure whatsoever] upon appellant by promises, threats, pleas of urgent need, or otherwise. On the contrary, the mere manner in which the sale was made indicates ready compliance. In our view, it is difficult to find a clearer case of readiness and predisposition to engage in the narcotics traffic than is shown here.

In making his finding of guilty, the trial court held that "there is no evidence of entrapment." The mere self-serving statement of counsel suggesting entrapment is not sufficient to cast doubt on the plain evidence that appellant was engaged in the traffic and ready, willing and able to make immediate delivery. See Trent v. United States, 1960, 109 U.S.App.D.C. 152, 284 F.2d 286, certiorari denied 1961, 365 U.S. 889, 81 S.Ct. 1035, 6 L.Ed.2d 199.

■ We think untenable the position that the trial court should have suppressed the evidence of violation of the narcotics laws seized under the arrest and search warrant because the warrant was based on actions allegedly constituting entrapment. Even if there had been entrapment—which we hold there was not—that position would extend the suppression of evidence doctrine to lengths beyond any which have been drawn to our attention.

We have examined the contention of appellant that the indictment was defective and find no error.

Affirmed.

EDGERTON, Circuit Judge (dissenting).

A police informer induced appellant to sell him heroin. "That being so, the burden was on the Government, by way of reply to the defense of entrapment, to prove a sufficient excuse for the inducement." United States v. Masciale, 2 Cir., 236 F.2d 601, 603. The reason for this rule seems clear. "The function of law enforcement * * * does not include the manufacturing of crime." [1] Ordinarily, government agents who induce crime are guilty of crime and the man they induce has the defense of entrapment. The Government must therefore prove extraordinary circumstances in order to convict.

Judge Learned Hand said: "two questions of fact arise: (1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence. On the first question the accused has the burden; on the second the prosecution has it. * * * [S]ince the prosecution had the burden upon the issue of the excuse for inducement, it had to satisfy the jury that [the defendant] did not need any persuasion; but that he stood ready to procure heroin for anyone who asked for it." United States v. Sherman, 2 Cir., 200 F.2d 880, 882–883. This court has said "reasonable suspicion" that a person is "engaging in such conduct" excuses inducement. Childs v. United States, 105 U.S.App.D.C. 342, 343, 267 F.2d 619, 620.

The Government's brief rightly says appellant's conviction rests upon the tes-

1. Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848.

timony of a Metropolitan Police Officer. The officer testified that he gave the informer money to buy narcotics, that the informer said he would buy them from George Fletcher, and that the officer then saw the following events. The informer walked along and across a street to some steps where appellant and one Colbert were sitting. Appellant, Colbert, and the informer had a short conversation and crossed the street. After this, the informer gave Colbert money and Colbert gave it to appellant. Appellant gave to Colbert, and Colbert gave to the informer, a paper that contained narcotics.

I see no evidence, to say nothing of proof to the degree of certainty required by criminal law, either (1) that the appellant "did not need any persuasion" but "stood ready to procure heroin for anyone who asked for it", or (2) that the informer who induced the appellant to commit the crime had a "reasonable suspicion" that he was "engaging in such conduct". The Government did not call its informer as a witness. There was no evidence as to what the informer knew or suspected about appellant. There was no evidence that appellant had previously sold narcotics. There was no evidence that the informer did not put extraordinary pressure upon appellant by promises, threats, pleas of urgent need, or otherwise. There was no evidence that appellant acquiesced readily and did not protest that he was reluctantly yielding to pressure. In my opinion it follows that there was entrapment as a matter of law. Counsel duly raised the point.

The first three counts of the indictment were based on the sale, which occurred July 25, 1960. The sale enabled the police to get a warrant for appellant's arrest and search his home on August 3. There they found the narcotics on which Counts 4 and 5 of the indictment are based. Appellant moved to suppress this evidence on the ground that the warrant resulted from the July 25 entrapment and was therefore illegal. The court ruled that there had been no entrapment and that the narcotics obtained on August 3 were, therefore, admissible in evidence. The conclusion fails if the premise fails. Entrapment to commit crime is not a legal way of acquiring evidence. It follows that a warrant resulting from evidence so acquired is invalid, search and seizure under the warrant are unreasonable, and the seized evidence must be excluded. This case is essentially like McGinnis v. United States, 1 Cir., 227 F.2d 598, 603, which held that "A federal agent cannot participate in an unlawful search, and then on the basis of what he observed in the course of that search, and on that basis alone, go to a United States Commissioner and swear out a search warrant. Such a search warrant, and the evidence procured in the course of a search thereunder, would be merely the illegal product of a previous unlawful search * * *." This case is also essentially like Fraternal Order of Eagles, No. 778, Johnstown, Pa. v. United States, 3 Cir., 57 F.2d 93, where evidence obtained by use of a warrant was excluded because the information on which the warrant was based had been obtained by fraud. "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." Silverthorne Lumber Co., Inc. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319. The "fruit of the poisonous tree" is not acceptable evidence. Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307. The public interest in discouraging entrapment to commit crime would be poorly served if only the *first* fruit of entrapment were excluded.

The court found appellant guilty as charged and imposed concurrent sentences of ten years on all counts. In my opinion his conviction on all counts should be reversed.